May it please the Court, I'm David Rosen here with Christopher Rideout of Rose, Klein & Marius on behalf of the Plaintiffs and Appellants. We would like to reserve five minutes of our time for rebuttal. The trial court erred in holding as a matter of law in this case that plaintiffs could not prove a disparate impact age discrimination claim because they said we changed theories. They said that we changed theories too late in the case. Neither of those things occurred. We didn't change our theory, and if we vacillated back and forth between the underlying theory of disparate impact, disparate impact was pled from the beginning and still part of our case all the way through. But it was that feeling and that holding of the trial court which we believe prevented the trial court from looking at the merits of whether we had raised a prima facie case of disparate impact. The trial court based that holding purely on two cases, Coleman and Nguyen, neither of which are applicable here. In both of those cases, the disparate impact itself was never pled, much less implied, until after summary judgment was filed in Coleman and after it was denied and reversed by an appellate court in Nguyen. Here, disparate impact was pled from the beginning. What changed, if anything, was the underlying factual theory that we were using to base our disparate impact claim. Well, let me ask you this. Ward's Cove holds that it's not enough to challenge a RIF in general in a disparate impact case, that the appellants must identify a specific employment practice. You suggest under Rose v. Wells Fargo that the appellants don't need to identify a specific employment practice. How do you reconcile Rose and Ward's Cove? Actually, Your Honor, we don't suggest that we don't have to identify a specific employment practice. We understand that under Ward's Cove and certainly now under Smith that we do have to identify such a practice. But under both Rose, which this Court wrote, and under Pottinger from this circuit, the RIF as a whole, under the circumstances of this RIF, can be the specific employment practice that we're challenging, and that's exactly what we're doing. In Ward's Cove, the basis for the RIF were objective criteria and very specific criteria. That's why we believe the Court focused on specific employment actions as being challenged. In other cases, including Rose, Pottinger, and even in Dicta in Smith, where the RIF is not easily or at all allowed to be or able to be subjected to a specific analysis, where the RIF is based upon subjective criteria, which are variable, where the selection process is based upon subjective and personal analysis as opposed to objective rules, then, said Rose and Pottinger, the RIF as a whole can be challenged. So in a sense, what you're really saying is that the specific employment practice is the decision to base the RIF on subjective criteria rather than objective criteria. That itself is a specific decision. Exactly. That's exactly what we're saying. And we're actually saying perhaps even a little bit more than that. The specific employment practice or practices that we're challenging were first identified by Your Honor. That is the decision to use the selection criteria that are subjective. But we are also challenging as part of the RIF a specific employment practice that it was embodied in this particular RIF, where you had multiple middle-level and upper-middle-level management making decisions about who to fire on, without any criteria at all, or based upon criteria that each individual manager created themselves. Though Qualcomm argued below, and argues in the briefs here, that the Human Resources Department at Qualcomm set some criteria, the deposition testimony in the record is clear that most of the managers or many of the managers did not know what those criteria were, even if the Human Resources Department had set them. And perhaps more important, even the managers who knew what the criteria were didn't follow them. So, again, under Rose and Pottinger, not changed at all by Smith, we do feel that we can challenge the RIF process as a whole on the two bases that I mentioned. Well, you are a little more dismissive of the district court's assertion that there was a change in theory here by simply saying, well, in the pleading, we said there was disparate impact. And that, in effect, allows the plaintiff then to make any argument consistent with that that might be factually supported. That's essentially what you're saying. Now, what I think the district court held was that you focused on what you saw as some written criteria by which you found fault, and litigated and discovered, if you will, with that in mind, and, in fact, responded to interrogatories in a way that suggested that you were fixed on that, and then at a later time said, oh, no, we mean the scheme in general. Your Honor, we don't believe that we should be able to just pick any fact and move from fact to fact to support disparate impact, although, again, the only two cases cited by the district court when they were talking about us impermissibly changing our theories were indeed cases where disparate impact was not even pled. More importantly, though, here, initially in the case, after the pleadings, at the time of Qualcomm's initial motion for summary judgment, plaintiffs were indeed challenging the RIF as a whole. Qualcomm understood that, and that, in fact, was the basis of their initial motion for summary judgment. They argued to the district court that Ward's Cove should prevent us from challenging the RIF as a whole. The district court, in our view, erroneously agreed with Qualcomm's argument at that time, and in that ruling specifically said, plaintiffs are trying to challenge the RIF as a whole. We're not going to let them do that. As the court, as Your Honor will recall, there was then some additional documents produced by Qualcomm late in the game, and that led to a reconsideration being granted. Now, at that point, because Qualcomm produced documents which were responsive to our requests as to produce the documents which were used in the selection-making process, and the main group of documents they produced and which both plaintiffs and the district court glommed on to, if you will, was the so-called ranking spreadsheet. At that point, because of the ruling of the court on reconsideration, we did indeed focus on the ranking spreadsheet for another, I would say, 12 to 13 months, not three years, as Qualcomm tries to argue. At the very end of the case, after discovery was closed and after law in motion was closed, Qualcomm was allowed to make a late motion for summary judgment, which is now the primary basis of this appeal. In that motion, they submitted 95 declarations which said, gee, none of us used that ranking spreadsheet. Frankly, had Qualcomm stopped there, our goose would have been cooked. But Qualcomm did not stop there. The 95 declarations went on to describe in detail the process that the managers did use for making selections. And that proved to us, and we would have thought the trial court, that our original factual theory under the pled disparate impact argument was correct, that the entire case was correct.  We did not use the ranking spreadsheet to break down, and therefore we could challenge the RIF as a whole, even under Ward's Cove and certainly under the other cases. Roberts. Right. Now, in their brief, the appellees on page 45 say, if you're right, if you're right, that you can just say the whole thing is foul, then all that an employer could do in these circumstances is figure out statistically what is acceptable and then lay off or terminate in accordance with what would be statistically okay, because any time you find a statistical imbalance in results, no matter what it is, it's foul. I know that Qualcomm ---- I don't think you answered that. I don't ---- I didn't pick up an answer to that in your brief. We tried it, and I'll try again. All right. I know that Qualcomm said that, and Qualcomm is wrong, as the Supreme Court in Smith recently discussed. Though it is, we believe, again, clearly true that we can challenge the RIF process as a whole under certain circumstances, the circumstances that we've described here. And then we can raise statistics to show an adverse impact, a significantly adverse impact on older workers, as we believe we've done here. It is not true that the employer, therefore, has no defense and no ability to make a proper layoff. In the first instance, the employer has control over the selection process, over the criteria that are going to be used. In this case, discovery revealed that the employer tried to exercise that kind of control. And as Qualcomm has argued, the Human Resources Department did issue some criteria. The problem for Qualcomm is that the control that they tried to issue about the selection process was not followed by its own people. Discovery reveals, by the way, why it was not followed. Qualcomm was in a rush to complete this RIF. Because, as we alleged from the beginning, the major element of damage for most of the people who were fired, those who were selected for termination, was loss of very valuable stock options. The options were about to vest. So Qualcomm did not follow its own process. Let me just finish by saying that the other way, of course, that the employer can defend even a openly challenged RIF with proper statistics, the employer can still defend on the basis of basing the firings, the individual firings, on reasonable factors other than age. So you're just saying the prima facie case is just a prima facie case. You could still lose at trial. That's exactly what we're saying in general and here. Because, again, of the trial court's mistaken view that we couldn't change our theory or that we had changed our theory, we believe they never got to whether we made a prima facie case. And, in fact, they said so in the opinion or in the ruling granting the motion for summary judgment, that they weren't going to even decide whether we made a prima facie case. They were just going to say that we didn't have a case because we changed theories. We contend that had they more correctly looked at the merits of our prima facie case, the burden would then have shifted under all the cases, including even Smith, to Qualcomm to show that each termination was based on reasonable factors other than age. Well, let me ask you this. The district court, in my reading, concluded that the terminations in each department were driven by business needs based on 96 declarations that Qualcomm managers and supervisors submitted. Is there any evidence in the record that refutes the business reasons given by Qualcomm? There's not evidence in the record now that refutes the evidence that Your Honor is citing to. However, I think that ---- Isn't that a problem? No, because I think Your Honor is over-reading or over-stating the evidence to which you just referred. The 90, I think it's 95 declarations of the Qualcomm managers, those 95 declarations are kind of burned in my mind. Those declarations do not show the business justification or the business necessity of any of the individual layoffs or even the layoffs as a group. Well, why did they offer them then? The declarations simply have the middle manager saying, here are some of the things that I considered when I decided who to lay off. But it's all very generalized and very vague, even in the declarations, for example. Well, I guess, I mean, that sounds like you're saying they're reasons but not good reasons. Don't you have to put some evidence on? What I'm saying is that they had to put some evidence on, not simply of standards that they thought that they would apply or that they say they applied when they made terminations. They didn't indicate in those declarations, as we believe they must once the burden shifts, they didn't indicate specifically how those criteria applied to individual people and justified the layoff of individual human beings. Instead, they said, gee, I don't know if human resources gave me a criteria. If they did, I didn't use it. What I thought about was who was working on which project. I thought about who had been here for a while and so on, but they don't say how they applied it. Do the declarations contain information about why, what happened in each of the divisions? What was the basis for the termination decisions in all of the divisions where the appellants were employed? No. I don't think they talk – I don't think the declarations talk about the basis for the terminations. Instead, I think the declarations were carefully crafted to a degree to talk about the criteria that each individual will use when making the decisions, but the criteria are not applied to any of the selections or any of the layoffs or firings in the declarations. What I'm in essence saying, Your Honor, is that the district court did not really shift the burden to Qualcomm, but if they did, Qualcomm did not aver enough evidence in those declarations, lengthy though they may be, to shift the burden back to us to show that – Pretext. Pardon me? To show pretext. Exactly. Counsel, you've used up almost all your time, and if you'd like to say – I can stop here unless the Court has more questions. We'll give you a little extra, too, because we asked a few, so. Thank you very much. We'll hear from Mr. Sullivan. Good morning, Your Honors. May it please the Court, Michael Sullivan of Paul Plevin Sullivan & Knotton on behalf of Qualcomm, Incorporated. I would like to address four issues that I think are presented in this case. The threshold question, which you noted near the outset, is whether or not the Court can reach the merits issues in this case based on the fact that the district court correctly concluded that the appellants had not identified the specific facially neutral practice that they are now attempting to challenge, that they changed that at the last minute. I think the Court's conclusion, after having presided over this matter for over three years, was certainly not clearly erroneous. The second issue has to do with the U.S. Supreme Court's recent affirmation of and its application of the Ward's Cove ruling and why that precludes plaintiff's bottom-line analysis. Thirdly, the fact that plaintiff's statistics, which control for no factors, would not support their claim or create a prima facie case in any event. And then finally, the fact that the Supreme Court's recent announcement, pronouncement of the reasonable factors other than age standard, is by itself dispositive in this case. In fact, let me just, so I don't forget it, make one correction with regard to what Appellant's counsel said. Jump into the end, and then I'll come back. And that is, the statement that the declarations do not identify the basis for individual decisions, that's just not true. The fact is the declarations do specify. I just pulled one quickly here from the declarations. And, for example, page 2814 of the record in the declaration of Paul Weddle, he notes, I selected plaintiff Udo Reitfeldt for layoff primarily because a recent reorganization had eliminated the need for a management position and his relevant skills were not as broad as the other managers were. All of the declarations provide that specific evidence. Counsel, let me ask you, this may come sort of out of left field, but it has to do with what needs to be shown for a prima facie case in general. The Supreme Court has obviously decided more specifically in this context in Wards Cove and Smith, but in a pair of cases having to do with jury selection, Batson cases, the court talked in general about a prima facie case in a very different context, but said essentially it doesn't take much to make out a prima facie case. Is that a general principle that should apply outside its specific context? And if not, why not? Basically the court seemed to be suggesting that it doesn't take much to bounce it to the next step and then complete the analysis of the other steps. I think in the context of employment discrimination, you have to separate that out into two different issues. Prima facie case for disparate treatment, I would agree with the concept that it doesn't take much to create the prima facie case and require the employer to go to the next step of identifying a specific reason. I would say that that is not the case with regard to disparate impact, because with disparate impact, there is not merely this next level of requiring the plaintiff, the employer, to articulate a legitimate nondiscriminatory reason. The prima facie case in a disparate impact case is the plaintiff's case, and they must isolate and identify a specific practice. To treat that loosely leaves an employer afloat in terms of trying to identify what is the practice you're talking about? What is the practice that we are going to defend to show that it is based on reasonable factors other than age? That was the struggle in this case throughout, was to identify and understand what was it that they were challenging. Now, I understand that you will disagree with this as a hypothetical, but what if an employer simply said to its managers, we're going to have a layoff, and you should just layoff whoever you feel like? Is that a specific practice? In other words, to just say, be subjective, do what you want. Can a plaintiff point to that as a practice and challenge it? Maybe not successfully, but isn't that a specific decision itself? I think that the Smith case even calls that into question, Your Honor, because in that case, the court really looked and said that even the pay practice that was involved in Smith with those police officers was not sufficiently specific to allow for a disparate impact case. So I don't know that the Supreme Court would find that that would satisfy the requirements. Certainly, that's not the case, as you note, that we have here, where there were specific objective factors as well as subjective factors. And, in fact, this case is very much like Ward's Cove, where in Ward's Cove, you had subjectivity. No question, the court notes throughout that there was subjectivity in the practice, but there were specific objective practices. Here, there was clearly objective decision-making that was involved. Elimination of projects. We don't need power engineers anymore. Power engineers are going away. Identification of specific skills that are needed. Elimination of work areas or work groups. But we're going to not do that work anymore. Those are all objective. Was it mixed with some subjectivity in this case? Yes, it was. But that's exactly where Ward's Cove says, when you have that mixture of objectivity  was even made in this case to isolate or identify, to say, here are the personnel decisions that were based purely on subjectivity. Here are the ones, personnel decisions that are based on elimination of positions or completion of projects. These are the ones that were based on skills assessments. And let's find whether it's the objective or the subjective. No effort was even made in this case to do so. Now, how many, now that the case has been decertified, how many plaintiffs are before the Court? There are presently, I believe, I'm not positive on this, but presently I believe there are 31. 31. Plaintiffs before the Court. 27, 31 in that general area.  I apologize, I don't know the exact number, Your Honor. Now, has any effort been looked, been made to look at the, if you will, at the merits of each of the cases? Now, we have this whole concept of all these dozens of affidavits from various departments or units that may have had nothing to do with any one of the 31. Actually, Your Honor, the 95 declarations deal with all of the, with 67 of the plaintiffs. Specific, they are, that's why those declarations. I know, but we don't have 67 now. Well, yes, because some have dismissed their claim, and that's why we have less. Well, what I'm getting at is supposing that you have, you have 31 plaintiffs, and among them there are plaintiffs who were terminated for one reason or another that is totally different from the reasons in another context. And here we're talking about a general program. It might be that in, for all we know, or is it the case, that in certain units the statistics are totally different from what the overall statistics are. And does that make any difference now? Is that? Well, yes, Your Honor. I mean, the fact is, is that there's no identification by the plaintiffs at all to show that their statistics are specific to any of the individuals. And to the extent that the individuals felt that they had an individual claim to challenge why they were selected for layoff, a disparate treatment claims were brought by the individual plaintiffs to show that they were subject to age discrimination. And plaintiffs dismissed that claim after the close of discovery because, surmised it's because there wasn't the evidence to support those claims. So they had the ability to say, you said I was terminated because I didn't have this skill. I did have this skill. I can show that. That's a pretext. And that claim would be properly brought as a disparate treatment claim, other than the fact they've abandoned it. But what I'm trying to get at is, is the merits of all 31 cases identical? No. And is the merits of the case as before us now, on summary judgment, the same as to all 31? No. I don't believe so, Your Honor, because the fact is, is that there were different criteria or specific practices that affected them. And so the answer to that would be no. Well, is there more than one plaintiff from a single unit? Or do we even know that? I'm using the word unit. I don't know how to do it. If you say division, yes. If there were six divisions, and if you said, is there more than one plaintiff from each division, I believe the answer to that is yes. But some decisions were made at even more refined units. Yes. Am I right? Yes, Your Honor. What I'm getting at is the merits of the 31st plaintiff the same as the merits of the first, and you're saying no. Yes. I am saying no. Do we have to look at each of them? No. Okay. Why not? Because the fact of the matter is, is that in order to bring a disparate impact claim, it is the plaintiff's responsibility to isolate and identify what the practice is. Then we can, once they've done that, then we can say, now, what plaintiff's claim? Well, I know you're saying we don't get to the merits in any of them. But let's assume that, let's assume for the sake of argument that we do get to the merits. I mean, you're saying that on the face of it, because the district court ruled that there was a shift in theory that the case was over, I'm talking about what if we get to the merits? Well, maybe I miscommunicated. That's what I was trying to say. Even if they had brought all along and said we are testing at the bottom line, then the merits of the case, the merits of the case would be analyzing what is the specific for a disparate impact case, which is what they're bringing. The merits of the case would be what is the specific practice they're challenging? Does it have statistical significance to it? And then, if so, is the employer's decision based on reasonable factors other than age? Those are the three questions. What's the practice? Does it have statistical significance? Is it based on reasonable factors other than age? And so my answer to the question is, looking at the merits that way, you first would have to identify what is the specific practice, which plaintiffs were subject to. Now we can statistically analyze. Then we can talk about what the reasonable factors are other than age.  I think that the 95 declarations come into play on the reasonable factors other than age. All right. So if we get to that point, and I think I was asking the question of the appellants. Say if we got to that point, and then we're looking at the 95, what evidence is there presented by the plaintiffs or appellants that refute that? Appellants provided absolutely nothing. Indeed, in their argument, they state this was the reason for the decision. They state that in their brief. This was the reason for the decisions. Now we have these 95 declarations. Now we know what the reasons are. And there is absolutely no rebuttal. That's why it is a — But what you're saying is even if we got to that point, that the 95, then you've done what you have to do, and they didn't do more. It's absolutely dispositive, Your Honor. I see — given the Court's decision in Smith v. City of Jackson, I see no way around the fact that we have identified the reasonable factors, they haven't shown any other factors, and they haven't shown in any way that those are unreasonable. Just as in Smith, it's dispositive. But if you have the affidavit of somebody from a division who laid off somebody, but it is not one of these plaintiffs, why is his declaration relevant? I would say that there are certain declarations there that are no longer relevant. There's no question that there's extra, if you will, declarations, but I don't think that takes away from the fact that there are declarations that deal with the plaintiffs and makes it clear that it's based on reasonable factors other than age.  I'm just simply groping. What's the difference between this case and 31 separate cases? Well, the difference is, is that a disparate — you could have 31 separate disparate treatment cases. You could have 31 separate disparate impact cases if 31 separate people identified practices. But other than that, there's not a difference. What I hear you saying is the practice was different in different divisions. That's part of the defense of this case, is it not? There were certain divisions emphasized different parts of the guidelines. Some of the divisions were losing money. They emphasized we're getting rid of this business. And it's theoretically possible that one or more of them could be good and one or more of them could be bad, and it would impact each of these plaintiffs differently. Yes. Okay? But the fact, Your Honor, is, is that through three years plus of discovery, plaintiffs never identified what practice for which plaintiff they were challenging. I understand that, okay. But I think you've answered my question. Some of these declarations might be totally irrelevant at this stage. Because of the fact that some of the plaintiffs have dismissed their claim, yes. They were relevant at the time, not relevant now because some plaintiffs have dismissed. Right. Okay. I realize I've hit my time. If I could hit one more point that I didn't make. You may, and then sum up after that. Yes. The one point that we didn't, did not hit is if you assume that they could challenge at the bottom line, there still is the whole statistical issue. Your Honor, in your comments to the appellant addressed the prima facie case in that way, the fact of the matter is, is that as the trial court found, the district court found, the statistics provided are wholly inadequate to support an adverse disparate impact claim in any event. They're gerrymandered. They do not control for any factors. This same expert was disregarded for the same reasons in the Texas Instruments case. And so even if one was to get over the hurdle of the fact that they were raising this for the first time and get over the hurdle of Ward's Cove and look at the merits, their statistical analysis fails to control for that. Indeed, the gerrymandered sample looks at 31.5 percent of the people terminated in his sample were over the age of 40, compared to 7.6 percent of the people actually laid off. I mean, it's four and a half times. And so the statistics were simply not valid, didn't control for any variables. In sum, then, Your Honor, our position is, is that Qualcomm, if it prevails for any of the four reasons, prevails in this case. We believe that strong arguments exist and it should prevail for each of the reasons that the Court was not clearly erroneous with regard to its original conclusion that it was not raised. Ward's Cove, which is directly on point, precludes this. Statistical analysis fails to support their claim. And in any event, the layoff decisions were based on reasonable factors other than age. Thank you, counsel. We will add a couple of minutes to your rebuttal time. Thank you, Your Honor. We used a bunch. Sometimes it appears to us that appellees are confusing this particular Qualcomm case with other Qualcomm employment cases. As we indicated during the opening part of our argument, there was a specific practice identified consistent with the law. As we also indicated during the opening part of our argument and in the briefs, the statistical analysis that Dr. Cloutie provided was not gerrymandered. There's no evidence of that. Moreover, the fact that Dr. Cloutie was excluded in one case does not mean that his conclusions in this case are not supportive of our prima facie case. And in fact, Dr. Cloutie's statistical analysis, like this one and different than this one, have been admitted and approved in a plethora of other cases. Perhaps most telling here is that in this case, Qualcomm declined to ever present its own statistical analysis, even though it admitted that it had done one. In this Court's ruling in the Rose matter, one of the things which controlled the decision that the statistical analysis of the plaintiff in Rose was not sufficient was because of the counteranalysis provided by the employer in Rose. We have nothing like that here. We simply have Qualcomm taking potshots, if the Court will, at some of Mr. Cloutie Dr. Cloutie's methods, methods, by the way, which were limited because of the discovery motions that were denied and that are also a part of our appeal. The trial court abused its discretion in denying a discovery motion made by plaintiffs seeking to compel Qualcomm to produce not the analysis of its adverse impact statistics, but simply the results, the black and white results of Qualcomm's adverse impact analysis. Qualcomm's failure to produce those documents and the Court's, in essence, approval of that failure very much hamstrung Cloutie and the plaintiffs because Cloutie could not perform the multiple regression analysis that he testified in his deposition he wanted to perform. In essence, Qualcomm is trying to have it both ways. They don't produce the documents which under the case law would have made the statistical issue clearer, and then because the documents aren't produced, they attack plaintiff's expert for not doing a deeper analysis. I think it's also very important for the Court to remember that if we move away for a second from the discovery motion challenge on this appeal, our challenge to the grant of the motion for summary judgment is reviewed de novo. It is not a clearly erroneous standard, as counsel mentioned not once but twice in his remarks. The employer, in short, is not left afloat by a law, a case law, which allows the plaintiff to challenge a process as a whole. The employer under Smith can control the selection process from the outset if it uses rigid, standardized rules or tests. But where an employer uses none of that, whereas here an employer uses a nonspecific, very subjective, undisciplined system of decision making, then the process still under Smith and certainly under Rose and Pottinger can be challenged as a whole. The second part of our prima facie case, which even in a disparate impact forum, the prima facie case is still a relatively low bar. The case law, again, in both Smith and Rose and Pottinger all says it's a low bar for disparate treatment and disparate impact prima facie presentation by the plaintiff. The second part is the statistical analysis. Here again, the factors that Dr. Cloudy produced and the results that the analysis produced are clearly sufficient under the Rose case, under the Pottinger case, and under the implication or dicta of the Smith case for a plaintiff to make a prima facie case. You have exceeded your extra time, so. Thank you very much. The case just argued is submitted. We appreciate the arguments of both parties. They were very helpful, as was the briefing. And with that, we will stand adjourned. Thank you.
judges: Leavy, Graber, Callahan